Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| FRANCIS & GUEITS LAW OFFICE, P.S.C., CHRISTIAN FRANCIS MARTÍNEZ<br><br>Parte Apelada<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE CAGUAS<br><br>Parte Apelante | TA2025AP00155 | *APELACION* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Caso Núm.: CG2024CV00338<br><br>Sobre:<br>Ley de Trasparencia y Procedimiento Expedito para Acceso a la Información Pública (Ley Núm. 141-2019) |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero

**Ortiz Flores, Jueza Ponente**

### SENTENCIA

En San Juan, Puerto Rico, el 7 de octubre de 2025.

Comparece el Municipio Autónomo de Caguas (Municipio; MAC o parte apelante) ante este Tribunal de Apelaciones y nos solicita que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala de Caguas (TPI) el 3 de junio de 2025 y notificada el 5 de junio de 2025. En el referido dictamen, el foro *a quo* declaró Ha Lugar la Moción de Desestimación al amparo de la Regla 39.2(c) presentada por Francis & Gueits Law Office, PSC y Christian Francis Martínez (en conjunto, parte apelada).

Adelantamos que, por los fundamentos que expondremos a continuación, confirmamos la decisión apelada.

**I**

El 22 de diciembre de 2023, la parte apelada solicitó al Municipio que proveyera acceso o produjera cierta información la cual constó de 37 requerimientos. Estos se desglosan a continuación:

1. Todos los comunicados de prensa emitidos por el Alcalde o cualquier funcionario público sobre el tema de estorbos públicos incluyendo aquellos en que se hayan abordado diversos temas y se haya incluido el tema de estorbos públicos.

2. Todos los comunicados o expresiones escritas hechas por cualquier contratista en representación del Municipio sobre el tema de estorbos públicos.

3. Todas las actas y minutas de todas las reuniones sostenidas con el Licenciado Christian Francis.

4. Todas las actas y minutas de todas las reuniones sostenidas con el Licenciado Alex M. Rivera Longchamps con cualquier funcionario o empleado público.

5. Todas las actas y minutas de todas las reuniones sostenidas con el Licenciado Luis A. Vázquez García.

6. Copia de todas las comunicaciones electrónicas intercambiadas entre el Licenciado Alex M. Rivera Longchamps y la Lcda. Mónica Y. Vega Conde.

7. Copia de todas las comunicaciones electrónicas intercambiadas entre el Licenciado Alex M. Rivera Longchamps y el alcalde.

8. Copia de todas las comunicaciones electrónicas intercambiadas entre el Licenciado Alex M. Rivera Longchamps y el director de la oficina de permisos incluyendo cualquier comunicación dirigida a los funcionarios o empleados de dicha oficina.

9. Copia de todas las comunicaciones intercambiadas entre la Licenciada Mónica Y. Vega Conde y la oficina de prensa sobre el tema de estorbos públicos.

10. Copia de todas las comunicaciones intercambiadas entre el alcalde y la oficina de prensa sobre el tema de estorbos públicos.

11. Copia de todas las comunicaciones intercambiadas entre la Licenciada Mónica Y. Vega Conde y el Licenciado Luis A. Vázquez García.

12. Copia de todas las comunicaciones electrónicas intercambiadas entre Roberto Carrasquillo Ríos y la Licenciada Mónica Y. Vega Conde.

13. Copia de las comunicaciones electrónicas en la que el municipio recibió la propuesta de servicios de parte de Francis & Gueits Law Offices.

14. Copia de las comunicaciones electrónicas en la que el municipio recibió la propuesta de servicios de parte de City Renewall L.L.C.

15. Copia de todos los contratos suscritos entre City Renewall L.L.C. y el municipio incluyendo el código del tipo de contrato asignado a cada contratación.

16. Copia de todos los contratos suscritos entre el Licenciado Alex M. Rivera Longchamps y el municipio incluyendo el código del tipo de contrato asignado a cada contratación.

17. Copia de todos los contratos suscritos entre Roberto Carrasquillo Ríos y el municipio incluyendo el código del tipo de contrato asignado a cada contratación.

18. Todas las facturas sometidas al municipio por parte de City Renewall L.L.C desde el año 2017 hasta el presente incluyendo el informe que detalla los servicios prestados y las horas invertidas en la prestación de los servicios.

19. Todas las facturas sometidas al municipio por parte del Lcdo. Alex M. Rivera Longchamps desde el año 2010 hasta el presente incluyendo el informe que detalla los servicios prestados y las horas invertidas en la prestación de los servicios.

20. Listado de todos los casos y asuntos referidos a la atención del Licenciado Alex M. Rivera Longchamps.

21. Todas las facturas sometidas al municipio por parte de Roberto Carrasquillo Ríos los años 2023, 2022 y 2021 incluyendo el informe que detalla los servicios prestados y las horas invertidas en la prestación de los servicios.

22. Todo memorando redactado por el Licenciado Alex M. Rivera Longchamps.

23. Toda opinión emitida por el Licenciado Alex M. Rivera Longchamps.

24. Todo memorando redactado por la Licenciada Mónica Y. Vega Conde relacionado al tema de estorbos públicos.

25. Toda opinión emitida por la Licenciada Mónica Y. Vega Conde.

26. Copia de todos los requerimientos de información cursados al municipio relacionados a estorbos públicos.

27. Copia de todas las contestaciones a los requerimientos de información cursados al municipio relacionados a estorbos públicos.

28. Copia de todas las investigaciones realizadas por la Licenciada Mónica Y. Vega Conde con relación al tema de estorbos públicos.

29. Copia de todos los informes rendidos por el Licenciado Alex Rivera Longchamps.

30. Copia de la descripción de las funciones y responsabilidades del puesto ocupado por la Licenciada Mónica Y. Vega Conde.

31. Toda comunicación oficial remitida por parte del municipio relacionada al tema de estorbos públicos a cualquier entidad gubernamental incluyendo sin limitación el CRIM, Departamento de Justicia, Oficina de Ética Gubernamental, Tribunal Supremo y la Junta Examinadora de Evaluadores Profesionales de Bienes Raíces PR.

32. Todo informe de tasación preparado por ECR Appraisal Group L.L.C. durante los años 2022 y 2023.

33. Todo informe, opinión o memorando de estorbos públicos preparado por ECR Appraisal Group L.L.C.

34. Copia de todo informe de investigación o auditoria preparada por el Licenciado Alex M. Rivera Longchamps.

35. Copia de todos los expedientes de las investigaciones y auditorias preparadas por el Licenciado Alex M. Rivera Longchamps sobre el tema de estorbos públicos.

36. Copia de todos los informes mensuales emitidos conforme a la Ley Núm. 141 de 1 de agosto de 2019 sobre el número de solicitudes recibidas, el tipo de información que se solicitó y el estatus de las solicitudes.

37. Informe la partida dineraria gastada atendiendo asuntos relacionados a estorbos públicos y detallarla por cada año fiscal por los últimos seis años.[1]

El 10 de enero de 2024 el Municipio contestó dicha solicitud y proveyó la información requerida con la excepción de quince (15) documentos los cuales objetó y brindó como motivo de que lo solicitado se trataba de material privilegiado y confidencial al amparo de la Regla 503 de Evidencia. Los requerimientos objetados fueron los incisos 4, 5, 6, 7, 8, 9, 11, 22, 23, 24, 25, 28, 29, 34 y 35.[2] A raíz de lo anterior, el Licenciado Ricardo A. Hatton en representación de la parte apelante, presentó el 1 de febrero de 2024 ante el TPI un *Recurso Especial de Revisión Judicial Para el Acceso a la Información Pública* al amparo de la Ley 141 de 1 de agosto de 2019, *Ley de transparencia y procedimiento expedito para el acceso a la información pública (Ley 141)* donde solicitó al tribunal que ordenara a la parte apelante entregar o proveer acceso a la información solicitada.[3] En torno a lo anterior, el Municipio sometió una *Moción de Desestimación* donde alegó que el recurso de revisión fue presentado tardíamente por lo que estaba prescrito y que en dicho recurso se omitió informar que el Municipio había provisto la información solicitada con excepción de lo que arguyó estaba cobijado por el privilegio abogado-cliente al amparo de la

---

[1] SUMAC, Entrada 110, págs. 1-3 y Anejo 5 de Entrada 12 en CG2024CV00338.
[2] SUMAC, Entrada 110, pág. 3 y Anejo 6b de Entrada 12 en CG2024CV00338.
[3] SUMAC, Entrada 1 en CG2024CV00338.

Regla 503 de Evidencia.[4] En su oposición, la parte apelada riposto que el acceso a la información pública es de rango constitucional, que no se puede rebatir con meros reclamos genéricos y estereotipados sino que la parte apelante debía propiamente alegar los requisitos que constituyen el privilegio abogado-cliente que reclaman.[5] Además, aclararon el asunto de prescripción.

Así las cosas, el 20 de marzo de 2024, el TPI declaró No Ha Lugar la *Moción de Desestimación* presentada por el Municipio y ordenó a este que produjera la documentación solicitada en los quince (15) requerimientos objetados o, en la alternativa, a justificar la aplicación del privilegio abogado-cliente de manera precisa.[6] Ante lo mencionado, el Municipio presentó una *Moción en Cumplimiento de Orden y Reiteración de Desestimación* en la cual, además de reiterar su solicitud de desestimación, alegó que la parte apelada había trabajado para el Municipio anteriormente, particularmente sobre temas relacionados a los asuntos por los cuales solicita acceso al amparo de la Ley 141. También adujo que la controversia se trataba de una disfrazada y que la parte apelante lo que intentaba era descubrir información protegida por el privilegio de abogado-cliente. Por último, el Municipio justificó la aplicación del privilegio evidenciario alegado.[7] El TPI entonces emitió *Orden* en donde sostuvo su No Ha Lugar a la *Moción de Desestimación* y dio por cumplida la orden de producción de documentación dictada el 20 de marzo de 2024.[8] La parte apelada entonces se opuso a la reiteración de la moción de desestimación y solicitó al tribunal que se celebrara una vista evidenciaría. Fundamentó su solicitud al alegar que las justificaciones que proveyó el Municipio no lograron establecer un caso *prima facie* mediante preponderancia de prueba que acreditara la procedencia del privilegio invocado.[9] Adicionalmente, subrayó el rango constitucional del derecho de

---

[4] SUMAC Entrada 12 en CG2024CV00338.
[5] SUMAC Entrada 14 en CG2024CV00338.
[6] SUMAC Entrada 15 en CG2024CV00338.
[7] SUMAC Entrada 16 en CG2024CV00338.
[8] SUMAC Entrada 17 en CG2024CV00338.
[9] SUMAC Entrada 18 en CG2024CV00338.

acceso a la información pública por lo que insistió en su reclamo de que el Municipio debía producir la información solicitada en cuanto a los requerimientos 4, 5, 9, 28, 29, 34 y 35. En la alternativa, pronunció que si el foro primario lo encontraba pertinente ordenara al Municipio a producir la información de los requerimientos 6, 7, 8, 11, 22, 23, 24 y 25 para que el tribunal la evaluara en cámara previo a la celebración de una vista presencial.

El Municipio se opuso al escrito anterior y expuso que el requerimiento número 4 era muy amplio al solicitar "[t]odas las actas y minutas de todas las reuniones sostenidas con el Lcdo. Alex M. Rivera Longchamps con cualquier funcionario o empleado público".[10] También alegó que algunas de las comunicaciones son redundantes pues están en posesión de la parte apelada. Por lo demás sostuvo su postura en cuanto a la aplicación del privilegio abogado-cliente puesto que las comunicaciones requeridas surgieron mientras las personas en cuestión actuaban en calidad de abogados frente al MAC, su cliente. Por último, manifestó que las actuaciones de la parte apelada eran abusivas y parecerían ser una expedición de búsqueda. Posteriormente se celebró una vista evidenciaria la cual resultó en que la parte apelada, a petición del foro primario, tuvo que modificar los requerimientos objetados para delimitar su alcance. Las modificaciones constaron en precisar que la información solicitada debía comprender la documentación pertinente al tema de estorbos públicos y desde el 2019 hasta el presente.[11]

Así las cosas, el caso continuó su curso en el foro primario donde ocurrieron numerosos incidentes procesales, entre ellos algunas vistas evidenciarias y distintas solicitudes provenientes de ambas partes. Posteriormente, el 5 de junio de 2025, el TPI notificó *Resolución* donde dispuso acerca del caso.[12] En la mencionada decisión, el foro *a quo* realizó las siguientes determinaciones de hechos:

---

[10] SUMAC Entrada 24 en CG2024CV00338.
[11] SUMAC Entrada 30 en CG2024CV00338.
[12] SUMAC, Entrada 110 en CG2024CV00338.

1.  El licenciado Christian Francis Gueits Martínez es un ciudadano residente de Puerto Rico.

2.  Francis & Gueits Law Offices, PSC es una entidad debidamente organizada al amparo de las leyes del ELA.

3.  El Municipio Autónomo de Caguas (MAC) es una entidad municipal autónoma del ELA.

4.  El Tribunal toma conocimiento judicial de que para el año 2021 y hasta el presente, el alcalde del MAC lo era el Honorable William Miranda Torres.

5.  La señora Lucille Cordero Ponce se desempeña como Directora de Recursos Humanos del MAC hace más de 19 años.

6.  La Licenciada Mónica Vega Conde es abogada y notario para el ELA y se ha desempeñado ostentando varias funciones en el MAC desde hace más de 22 años.

7.  Actualmente, la Licenciada Mónica Vega Conde se desempeña como Asesora Ejecutiva del alcalde y Directora Legal del MAC.

8.  La Licenciada Mónica Vega Conde describe sus funciones dentro del MAC cómo "todo aquello que conlleve implementar la política pública del MAC".

9.      En la descripción de trabajos del Asesor Ejecutivo del MAC, función que actualmente ostenta la Licenciada Mónica Vega Conde, se encuentran las siguientes:

- "Coordina y ofrece seguimiento a todas las actividades que se llevan a cabo en las Oficinas adscritas a Asesoramiento Ejecutivo tales como: Planificación, Recursos Humanos, Asuntos Ambientales y Permisos. Planifica, coordina, dirige y supervisa personal profesional, especializado y de supervisión adscrito a su Oficina. …

- Evalúa y monitorea el cumplimiento con las métricas, estándares y objetivos establecidos para asegurar que respondan a la misión, planes estratégicos y planes de trabajo del Municipio y de la Oficina del Asesor Ejecutivo.

- Establece sistemas de control que permitan verificar el cumplimiento cuantitativo y cualitativo de los programas, proyectos y actividades de las Oficinas asignadas.

-Representa al (a la) Alcalde (sa), Vice Alcalde (sa) y a otros funcionarios en reuniones, conferencias y ante agencias gubernamentales, estatales y federales, en asuntos de su área de responsabilidad y competencia.

- Prepara, administra y controla el presupuesto general de la Oficina del Asesor Ejecutivo, evalúa los servicios, gastos e ingresos e identifica alternativas de control de costos y generación y captación de fondos.

- Evalúa y desarrolla normas y procedimientos de trabajo para mejorar y optimizar la prestación de los servicios municipales.

- Representa al (a la) Alcalde (sa) y a (a la) Vice Alcalde (sa) (a) en reuniones y en gestiones oficiales ante agencias públicas, estatales y federales y lo (la) representa ante foros y otras actividades y encomiendas asignadas.

- Redacta informes y comunicaciones para firma del (de la) Alcalde (sa) y del (de la) Vice Alcalde (sa).

- Coordina actividades con las distintas unidades administrativas del Municipio municipal para el logro de su plan de trabajo y resultados esperados.

- Prepara el presupuesto de la Oficina y desarrolla los reglamentos y propuestas necesarias para la solicitud y utilización eficaz de los fondos asignados.

- Rinde los informes narrativos y estadísticos que le requiera el (la) Alcalde (sa), la Legislatura Municipal y para las agencias públicas reguladoras.

-Desarrolla con su equipo de trabajo, Directores de Oficinas a su cargo e implanta planes de contingencia para atender situaciones de emergencia que afectan las operaciones funcionamiento y el servicio de la Oficina y del Municipio. …

- Realiza otras encomiendas especiales que le sean solicitadas por el (la) Alcalde(sa).

- Sustituye a Secretarios(as), Directores (as) y funcionarios del Servicio de Confianza, en ausencias y vacaciones, según le sea requerido".

10. El Licenciado Alex Rivera Longchamps es abogado para la jurisdicción del ELA.

11. El Licenciado Alex Rivera Longchamps le rinde servicios profesionales al MAC.

12. El Licenciado Alex Rivera Longchamps fue nombrado como 'Oficial Investigador' del MAC en su investigación sobre el tema de erradicación de estorbos públicos en el municipio mediante comunicación fechada el 26 de abril de 2023 emitida por la Licenciada Mónica Vega Conde en nombre del Honorable William Miranda Torres.

13. En la comunicación fechada el 26 de abril de 2023 emitida por la Licenciada Mónica Vega Conde nombrando al Licenciado Alex Rivera-Longchamps como 'Oficial Investigador' del programa de erradicación de estorbos públicos del MAC se establece que su función será examinar minuciosamente las transacciones generadas por los proveedores contratados para atender el problema de estorbos públicos, incluyendo la empresa Francis & Gueits. En otras palabras, el Licenciado Rivera-Longchamps fue investido de funciones investigativas, no jurídicas, dirigidas a fiscalizar contratos públicos como parte de un esfuerzo institucional de cumplimiento y rendición de cuentas y no a finalidades jurídicas.

14. El Licenciado Alex Rivera Longchamps levantó un expediente sobre su investigación para la erradicación de estorbos públicos en el MAC.

15. Por reglamento, las Asambleas Municipales del MAC son abiertas al público.

16. En Asamblea Legislativa celebrada el 18 de octubre de 2023 compareció el Licenciado Alex Rivera Longchamps e informó a los presentes que estaba liderando una investigación sobre el manejo de estorbos públicos en el MAC por los contratistas contratados para dicha tarea.

17. En una fecha anterior al 23 de marzo de 2024, las periodistas Damaris Suárez y Wilma Maldonado del CPI solicitaron al alcalde del MAC, el Honorable William Miranda Torres, información sobre el programa de erradicación de estorbos públicos del MAC.

18. El Honorable William Miranda Torres citó a las periodistas Damaris Suárez y Wilma Maldonado a una conferencia de prensa, en la cual estuvieron presentes el propio alcalde; el Licenciado Alex Rivera Longchamps; la consultora de medios del MAC, la señ[o]ra Carmen Serrano; el Licenciado Héctor López; el Ingeniero Jaime Plaza y las periodistas Damaris Suárez y Wilma Maldonado.

19. En dicha conferencia de prensa se discutieron los temas de:

- que el Licenciado Rivera Longchamps fue designado por el alcalde como 'Oficial Investigador' de la investigación llevada a cabo tras quejas públicas sobre el proceso de erradicación de estorbos públicos en el MAC;

- el mal manejo de fondos por Universal Properties, contratista del MAC;

- facturas de Universal Properties;

- se cuestionaron las tasaciones, los estudios de título y los documentos sometidos a la Oficina de Gerencia y Permisos (OGPe) del MAC;

- que Universal Properties solicitó reconsideración de la terminación de su contrato con el MAC aunque dicha comunicación es privada porque toda comunicación entre el municipio y sus contratistas es confidencial;

- el referido de Universal Properties al Departamento de Justicia;

- la falta de justificantes de los gastos incurridos por los contratistas;

- la irregularidad en el otorgamiento de escrituras de compraventa (de propiedades expropiadas) antes de concluir el trámite judicial;

- se mencionó que 16 propiedades fueron expropiadas y vendidas a terceros;

- que Universal Properties no depositaba los fondos pagados en cuentas en plica según requeridas por ley; y

- que hubo controversia sobre las tasaciones de las propiedades (sujetas a expropiación por constituir estorbos públicos).

20. El 23 de marzo de 2024 se publicó en la página web del periódico electrónico Centro de Periodismo Investigativo, un artículo titulado "Caguas Cancela Contrato a Universal Properties y la Refiere a Justicia por Irregularidades con Estorbos Públicos" preparado por las periodistas Damaris Suárez y Wilma Maldonado.

21. El artículo del Centro de Periodismo Investigativo arriba mencionado integra un video del Licenciado Rivera Longchamps hablando del tema de las irregularidades encontradas en el manejo de estorbos públicos en el MAC.

22. El 1ro de abril de 2024, el Licenciado Alex Rivera Longchamps discutió sus hallazgos sobre el tema de irregularidades en la erradicación de estorbos públicos en una sesión de la Asamblea Municipal del MAC.

23. El Licenciado Alex Rivera Longchamps ha llevado a cabo actividades para la recaudación de fondos para adelantar los fines políticos del actual alcalde del MAC, William Miranda Torres.

24. Francis & Gueits Law Offices, PSC y el MAC suscribieron un contrato de servicios profesionales el 11 de mayo de 2021 mediante el cual el primero le rendiría al segundo servicios profesionales encaminados a la erradicación de estorbos públicos en el MAC.

25. El 12 de octubre de 2023 el contrato habido entre Francis & Gueits Law Offices, PSC y el MAC fue terminado por el Honorable William Miranda Torres.

26. El 22 de diciembre de 2023 al amparo de la Ley 141 del 1ro de agosto de 2019, según enmendada, y mejor conocida como la Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública (en adelante Ley 141-2029) el Lic. Christian F. Gueits y Francis & Gueits Law Offices, PSC le hicieron un requerimiento de información al MAC mediante misiva privada.

27. El 10 de enero de 2024, el MAC le notificó al Lic. Christian F. Gueits y Francis & Gueits Law Offices, PSC un total de 3,213 folios distribuidos en 412 documentos, contestando prácticamente la mitad de los requerimientos y objetando la otra mitad ya que en todos los requerimientos objetados se solicitaba información intercambiada entre abogados y/o el MAC, la cual fue objetada alegando la aplicación de la Regla 503 de Evidencia – que la información allí solicitada estaba amparada bajo el privilegio abogado cliente.[13]

---

[13] *Id.*, págs. 8-11.

Adicional a lo anterior, el TPI declaró Ha Lugar a la *Moción de Desestimación moción al amparo de la Regla 39.2(c) de Procedimiento Civil* promovida por la parte apelada al concluir el desfile de prueba. Para fundamentar su decisión expuso que, a tenor con el derecho aplicable, el privilegio abogado-cliente o cobijaba la información solicitada por la parte apelada puesto que el Municipio no logró demostrar que las comunicaciones requeridas cumplían con los requisitos exigidos para que el mencionado privilegio se active. Por ende, ordenó al Municipio a producir los requerimientos objetados relacionados al manejo de estorbos públicos, desde el 2019 hasta el presente. Pare ello, concedió un término de quince (15) días. En torno a su conclusión, específicamente razonó lo siguiente:

> En el caso en marras, vemos que el MAC ha objetado la producción de TODA comunicación habida entre el municipio y sus abogados por la única razón generalizada de que constituye comunicación abogado-cliente. Ello no es factible, máxime cuando ha quedado demostrado ante este Tribunal que los abogados del MAC no estaban limitados a dar consejo legal al municipio, si no que ejercían otras funciones que no tienen privilegio aplicable tales como, representar a oficiales del municipio, preparar presupuesto, coordinar actividades y realizar tareas investigativas de hechos. También ha quedado evidenciado a este Tribunal que, en ocasiones, los abogados del MAC comunicaban a terceros información que aparentaría ser privilegiada, pero pierde tal característica – o, mejor dicho, se renuncia al privilegio – al comunicarla fuera de la relación abogado-cliente.
>
> En particular, en el testimonio vertido por el Licenciado Alex Rivera Longchamps en las vistas evidenciarias del 31 de enero y del 13 de mayo de 2025 surgió de manera meridianamente clara que los hallazgos que este recopiló para su cliente, el MAC, con relación al manejo de los estorbos públicos fueron discutidos ante la Legislatura Municipal el 18 de octubre de 2023 y el 1ro de abril de 2024 en sesiones abiertas al público. La comparecencia pública del Licenciado Rivera Longchamps, en su carácter de oficial investigador designado por el alcalde, constituye una divulgación voluntaria, explícita y no confidencial de los resultados de su gestión, realizada ante un foro legislativo abierto y grabado oficialmente para efectos de transparencia institucional. Esta actuación refuerza la naturaleza no jurídica ni confidencial de su encomienda, y resulta jurídicamente incompatible con cualquier invocación posterior del privilegio abogado-cliente.
>
> Igualmente surgió que, en fecha anterior al 23 de mayo de 2023, las periodistas Damaris Suárez y Wilma Maldonado del Centro de Periodismo Investigativo, fueron invitadas por el alcalde Honorable William Miranda Torres a la alcaldía a discutir las acciones llevadas a cabo por el MAC, a través de su oficial investigador Alex Rivera Longchamps y parte de los hallazgos sobre irregularidades señaladas públicamente en

el programa de erradicación de estorbos públicos del MAC. No cabe duda en la mente de este juzgador que dicha concurrencia de personas fue de facto una conferencia de prensa y no una 'entrevista' cómo trató de reclasificarla el Licenciado Rivera Longchamps en su testimonio, ya que el alcalde requirió la presencia de su consultora de medios, la señora. Carmen Serrano, en la misma. De ser una 'entrevista' sin expectativa de salir a los medios de comunicación, no sería necesaria la presencia de la señora. Serrano. El propio alcalde del MAC renunció de manera voluntaria al privilegio de comunicación abogado-cliente entre el MAC y sus representantes legales en cuanto al tema del programa de erradicación de estorbos públicos en el municipio.

El 25 de mayo de 2023 el periódico web, Centro de Periodismo Investigativo, publicó un artículo titulado "Caguas Cancela Contrato a Universal Properties y la Refiere a Justicia por Irregularidades con Estorbos Públicos" preparado por las periodistas Damaris Suárez y Wilma Maldonado. Dicho artículo integra un video del Licenciado Rivera Longchamps hablando del tema de las irregularidades encontradas en el manejo de estorbos públicos en el MAC. También surgió que dicho artículo fue publicado luego de que el MAC celebrara la conferencia de prensa convocada por el municipio en la cual participaron el alcalde, el Honorable William Miranda Torres; el Licenciado Alex Rivera Longchamps; la consultora de medios del MAC, la señora. Carmen Serrano; el Licenciado Héctor López; el Ingeniero Plaza y las antedichas periodistas Damaris Suárez y Wilma Maldonado.

Este Tribunal dio credibilidad a la publicación titulada "Caguas Cancela Contrato a Universal Properties y la Refiere a Justicia por Irregularidades con Estorbos Públicos" preparado por las periodistas Damaris Suárez y Wilma Maldonado el 25 de mayo de 2023 el periódico web, Centro de Periodismo Investigativo a tenor con la jurisprudencia establecida en el caso Abigail Rosado Reyes v. Global Healthcare Group, LLC, supra, dado el hecho de que pudo investigar la existencia de dicha publicación directamente en su computadora portátil en ocasión de la vista y pudo identificarla por sus logos y apariencia, máxime cuando el testigo Rivera Longchamps se identificó en el video integrado al artículo en cuanto a forma y contenido.[14]

Una vez notificada a las partes la decisión del foro primario, el Municipio presentó una *Solicitud de Determinaciones y de Hechos Adicionales y de Reconsideración*[15] donde solicitó que se incluyeran determinaciones de hechos referente a los servicios legales que el Bufete Francis & Gueits Law Office P.S.C. y su representante, en su capacidad profesional, brindó al MAC. Particularmente sobre el tema del manejo de estorbos públicos y la relación contractual habida entre ambas partes a esos fines. También incluyó determinaciones de hechos basados en

---

[14] *Id.*, págs. 17-18.
[15] SUMAC, Entrada 112 en CG2024CV00338.

prueba testifical. Mediante *Resolución Sobre Solicitud de Determinaciones de Hechos Adicionales y Reconsideración*,[16] el foro de instancia declaró No Ha Lugar la solicitud de reconsideración, pero acogió las siguientes determinaciones de hechos:

(1) El MAC contrató para proveer servicios legales al Bufete de abogados Francis Guiets Law Offices, PSC. El contrato número 2021-003141 con fecha de 11 de mayo de 2021 existe y consta debidamente registrado en el Registro de Contratos de la Oficina del Contralor de Puerto Rico.

(2) A esa contratación compareció en representación del Bufete, el Lcdo. Christian Francis Martínez, véase SUMAC #12, Anejo 1.

(3) A esa contratación en representación del MAC compareció la Lcda. Mónica Vega Conde. Véase SUMAC # 12, Anejo 1.

(4) El Bufete y su representante (el Abogado) fueron contratados para proveer servicios en el manejo de los estorbos públicos en el MAC incluyendo comparecencia a los foros judiciales. Véase SUMAC # 12, Anejo 1.

(5) El contrato entre las partes incluyó cláusulas e incisos específicos en torno a la relación abogado cliente y expresamente señaló que:

"----VIGÉSIMO TERCERO: Todos los materiales, documentos, informes, minutas de reuniones, datos e información que resulten de los estudios y gestiones de "EL CONTRATADO" serán de la exclusiva propiedad de "EL MUNICIPIO". "EL CONTRATADO" reconoce la naturaleza de la confidencialidad de la información producto de este contrato, por lo que no podrá ofrecer información alguna sobre las gestiones relacionadas con este artículo. a) "EL CONTRATADO" certifica que entiende que toda información recopilada producto de su trabajo, durante el término del acuerdo, así como información de facturación, es propiedad de "EL MUNICIPIO" y de índole confidencial, por tal razón se prohíbe la reproducción total o parcial, divulgación y/o distribución por cualquier medio ya sea oral, escrita o de manera electrónica a cualquier persona, firma u organización y/o terceras personas, sin autorización previa de "EL MUNICIPIO". Toda información producto de su trabajo es confidencial. La violación de esta cláusula de Confidencialidad dará lugar a la terminación inmediata del contrato sin que con esto se entienda renunciando el derecho de "EL MUNICIPIO" de ejercer acción legal correspondiente. … d) "EL CONTRATADO" cumplirá con todas las leyes, normas y reglamentos federales, estatales y municipales aplicables a este contrato o a la ejecución y cumplimiento del mismo". Énfasis suplido. Véase SUMAC 12, Exhibit 3.

---

[16] SUMAC, Entrada 118 en CG2024CV00338.

(6) Se solicita tomar conocimiento judicial del contrato del MAC con el Bufete a tenor con las disposiciones de la Regla 201 de Evidencia.

(7) Los servicios contratados al Bufete y el requerimiento de información de este caso versan sobre el mismo asunto, estorbos públicos.

(8) El MAC prescindió de los servicios legales del Bufete demandante y por consiguiente del Abogado también. Véase comunicación escrita, véase SUMAC #12, Anejo 2.

(10) Pendiente ante la consideración de este Tribunal, el Bufete y el Abogado demandaron a su anterior cliente, el MAC y múltiples funcionarios, abogados y partes. Se solicita tomar conocimiento judicial a tenor con la Regla 201 de Evidencia del caso Francis & Gueits Law Offices, P.S.C. y Otros v. Municipio Autónomo de Caguas y Otros, CG2024CV03364.

(11) El caso CG2024CV03364 comenzó a ventilarse en esta misma sala, ante la misma Juez hasta que en determinado momento ésta determinó recusarse voluntariamente y fue sustituida por otro Juez. Se solicita tomar conocimiento judicial a tenor con la Regla 201 de Evidencia.

(13) El Abogado y el Bufete presentaron un requerimiento de información al MAC al amparo de la Ley 141, supra. el 22 de diciembre de 2023. Véase, SUMAC #12, Anejo 5.

(15) El MAC contestó los 37 requerimientos de información solicitados el 8 de enero de 2024, Véase SUMAC #12, Anejo 6B.

(16) La contestación ofrecida por el MAC incluyó que para 22 de los requerimientos se proveyera a los demandantes 3,213 folios divididos en 412 documentos. Véase SUMAC #12, Anejo 7.

(19) El Abogado y el Bufete presentaron un recurso especial de revisión que es el que se ventila en este caso.

(22) El Lcdo. Francis Guiets además de contar con su representante legal, asistió a todas las vistas, también fungió como su propio abogado, presentó prueba, hizo argumentaciones orales y planteamientos en dos ocasiones durante el transcurso de este caso judicial contra su anterior cliente el MAC. Véase Exhibit 1 de este escrito, pág. 106, líneas 5-6 de la transcripción de 27 de agosto de 2024 y argumentación final del 13 de mayo de 2025, véase Exhibit 10 de este escrito, pág. 313 ---, línea 23 a la página 318 línea 6 de la transcripción.

(25) El TPI celebró una vista evidenciaría que se extendió por las fechas 27 de agosto de 2024, 26 de noviembre de 2024, 31 de enero de 2025 y 13 de mayo de 2025.

(26) El MAC presentó como testigo a la Sra. Lucille Cordero Ponce, Directora de Recursos Humanos del MAC. Véase SUMAC #64.

(27)   La Sra. Cordero testificó en cuanto a las funciones, deberes y responsabilidades de la Lcda. Mónica Vega.

(28)   La Sra. Cordero testificó el día 27 de agosto de 2024 entre otros aspectos lo siguiente:

- que es la Directora de Recursos Humanos del MAC, véase SUMAC #64, Exhibit 1, de la transcripción de vista de 27 de agosto de 2024, página 41, línea 23;
- que lleva 19 años en calidad de Directora de Recursos Humanos en el MAC, véase SUMAC #64, Exhibit 1, página 42, línea 1, de la transcripción de vista de 27 de agosto de 2024;
- declaró sobre su experiencia previa y estudios universitarios incluyendo Maestría en Psicología Organizacional, véase SUMAC #64, Exhibit 1, página 42, línea 4 y página 43, líneas 8-9 de la transcripción de vista de 27 de agosto de 2024;
- describió el sistema de Recursos Humanos del MAC y que ese sistema "está basado en competencias organizacionales y los valores de la administración municipal. Nuestro objetivo es atraer, retener, desarrollar el talento más idóneo, a tono al principio de mérito." Véase SUMAC #64, Exhibit 1, página 43, líneas 15-20 de la transcripción de vista de 27 de agosto de 2024;
- Explicó que en el 2022 el MAC revisó su plan de clasificación tanto del servicio de carrera como de confianza, véase SUMAC #64, Exhibit 1, página 44, líneas 6-11 de la transcripción de vista de 27 de agosto de 2024;
- Explicó que en torno al servicio de confianza este consiste en: "El servicio de confianza comprende aquellos empleados que trabajan directamente con el alcalde en el desarrollo e implantación de su política pública, asesorando al alcalde en los distintos temas de su... de acuerdo a su expertise", véase SUMAC #64, Exhibit 1, página 44, líneas 6-11 y 17-22 de la transcripción de la vista de 27 de agosto de 2024;
- Se presentó y estipuló tanto una Certificación producida por la Sra. Cordero y así como el documento que le acompañaba que se identificó como "Especificación de Clase de Asesor Ejecutivo", véase SUMAC #64, Exhibit 1, página 45, líneas 6-11 y 10-25; página 46, línea 1-17 de la transcripción de vista de 27 de agosto de 2024;
- La Sra. Cordero declaró que en sus propias palabras esa especificación de clase representa que "El Asesor Ejecutivo es el principal asesor legal del Municipio de Caguas, quien asesora al alcalde y al componente ejecutivo en todo lo que es materia legal. También coordina todos los trabajos de las oficinas de Asesor", véase SUMAC #64, Exhibit 1, página 48, líneas 1-2 de la transcripción de vista de 27 de agosto de 2024;
- Explicó que un requisito esencial para esa clase es que la persona tiene que ser abogado y notario y que incluye funciones de supervisión, véase SUMAC

#64, Exhibit 1, página 48, líneas 9-10 de la transcripción de vista de 27 de agosto de 2024;

- También explicó que le responde al Alcalde y es este quien le supervisa; véase SUMAC #64, Exhibit 1, página 49, líneas 8-10 de la transcripción de vista de 27 de agosto de 2024;

- Explicó el contenido de la clase y además testificó que: no es posible ocupar esa plaza si no se es abogado. Véase SUMAC #64, Exhibit 1, página 54, línea 14 de la transcripción de vista de 27 de agosto de 2024;

- Afirmó que en el organigrama del Municipio esa posición responde a la única División Legal que hay en el MAC, véase SUMAC #64, Exhibit 1, página 54, línea 12-24 de la transcripción de 27 de agosto de 2024;

- Fue objeto de contrainterrogatorio por la parte demandante y en este explicó que quien ocupa esa plaza no es un administrador municipal en el MAC, véase SUMAC #64, Exhibit 1, página 62, línea 5 y 6 de la transcripción de vista de 27 de agosto de 2024;

- Que cuando la Lcda. Mónica Vega, Asesora Ejecutiva y Directora de la División Legal firma un documento "[s]i ella lo hace porque es abogada o porque es el representante del Municipio, pues... Sí, lo hace como abogada y como representante del Municipio." Véase SUMAC #64, Exhibit 1, página 63, líneas 20-23 de la transcripción de vista de 27 de agosto de 2024;

- Que en el área de competencia de la Lcda. Mónica Vega para representar al Alcalde o cualquier otro funcionario es requerido que sea abogada, véase SUMAC #64, Exhibit 1, página 67, líneas 22-25 de la transcripción de vista de 27 de agosto de 2024.

(29) El MAC presentó como testigo a la Lcda. Mónica Vega Conde quien brindó testimonio el día 27 de agosto de 2024. Como parte de su testimonio explicó que:

- Lleva 22 años trabajando en el MAC y se ha desempeñado en diversos roles durante ese periodo de tiempo. Véase SUMAC #64, Exhibit 1, página 77 y 78 de la transcripción, líneas de la 21 a 4 respectivamente;

- Que actualmente se desempeña como Asesora Ejecutiva del alcalde y directora de la División Legal, véase SUMAC #64, Exhibit 1, página 78, líneas 16-17 de la transcripción de la vista de 27 de agosto de 2024;

- Que está admitida a ejercer la profesión de abogado y de notaria en Puerto Rico, véase SUMAC #64, Exhibit 1, página 79, líneas 6- 14 de la transcripción de vista de 27 de agosto de 2024;

- Trabaja con aspectos relacionados a contratación, notaria e incluye en ocasiones representación legal del MAC en foros administrativo y la EEOC entre otros. Véase SUMAC #64, Exhibit 1, página 80, líneas 5-13 de la transcripción de vista de 27 de agosto de 2024;

- Que desde el 2014 ocupa la posición de Directora Legal. Que más recientemente producto de la situación fiscal se consolidó en su rol también, el de Asesora Ejecutiva, véase SUMAC #64, Exhibit 1,

página 82, líneas 14-23 de la transcripción de vista de 27 de agosto de 2024;

- Que como parte de sus responsabilidades en torno al tema de estorbos públicos su contacto de todo tipo, ya que está a cargo de supervisar la gestión de la oficina de Permisos, quien es la que maneja y administra el contrato del Programa de Erradicación de Estorbos Públicos y que bajo ese programa se contrató al Bufete demandante. Que fue ella quien compareció a la firma del contrato. Véase SUMAC #64, Exhibit 1, página 83, líneas 2-14 de la transcripción de la vista de 27 de agosto de 2024;

- Durante el testimonio de la Lcda. Vega el MAC reafirmó que: que la licenciada tiene derecho a estar ahí sentada, porque ella es la Directora de la División Legal del Municipio y la principal abogada del Municipio. Véase SUMAC #64, Exhibit 1, página 92, líneas 14- 17 de la transcripción de vista de 27 de agosto de 2024;

- Vega Conde explicó que revisa documentos y le corresponde revisarlos en cuanto a lo legal de lo que se le presenta y tiene ante sí. Véase SUMAC #64, Exhibit 1, página 85-96, líneas 24 a la 2 respectivamente de la transcripción de vista de 27 de agosto de 2024 por el Lcdo. Charlotten;

- Fue objeto de contrainterrogatorio. En ese proceso se le pregunto si sus funciones eran más bien de implantar política pública y ésta respondió que no necesariamente. Véase SUMAC #64, Exhibit 1, página 99, líneas 3-7 de la transcripción de vista de 27 de agosto de 2024;

- La Lcda. Vega luego de comenzar a leer sus funciones a solicitud del demandante este cambio su línea de contrainterrogatorio y requirió que esta declara entre otros aspectos que sus funciones incluyen fungir como un abogado de una ciudad y en general todas esas funciones requieren política pública. Véase SUMAC #64, Exhibit 1, página 105-106, líneas 12 a la 15 respectivamente de la transcripción de vista de 27 de agosto de 2024;

- Que los contratos firmados incluyendo el de los demandantes "Lo firmé como abogada del Municipio", véase SUMAC #64, Exhibit 1, página 107, línea 14 de la transcripción de vista de 27 de agosto de 2024;

- Durante el contrainterrogatorio el MAC planteo nuevamente que de las propias expresiones de los demandantes se derivaba que: "Su Señoría, pedimos que a base de las propias admisiones del representante del demandante este asunto se desestime. Precisamente por eso es que el licenciado Francis Guiets no puede estar aquí.

Precisamente por eso es que el bufete no puede demandar al Municipio para discutir el tema de estorbos públicos, que es la razón de lo pedido." Véase SUMAC #64, Exhibit 1, página 113, líneas 2-9 de la transcripción de vista de 27 de agosto de 2024.

(30) Desde el inicio del proceso antes de comenzar la presentación de prueba con la Sra. Cordero el MAC solicitó se mantuviese en sala a la Lcda. Vega Conde toda

vez que esta se desempeña como Asesora Legal del MAC y no contar con ella afectaba el derecho a estar adecuadamente representado. Que no existe ningún otro director legal en el MAC y es la persona enlace con la representación legal del MAC en este caso y otros similares iniciados por las mismas partes.

(31)   El MAC reiteró su petición durante el transcurso del caso en varias ocasiones incluyendo una vez se advino en conocimiento de una nueva demanda por parte del Abogado y el Bufete contra el MAC y la propia Lcda. Vega Conde, entre otros.

(32)   Todas las veces que se solicitó la permanencia de la Lcda. Vega fueron rechazadas por el TPI.

(33)   Igual se solicitó para el Lcdo. Rivera Longchamps y fue rechazado.

(35)   El MAC presentó, autenticó y fue admitido en evidencia 4 cartas intercambiadas con el Abogado y el Bufete. Las comunicaciones son:

- Comunicación del 12 mayo de 2023 del Lcdo. Alex M. Rivera Longchamps dirigida al Lcdo. Francis Guiets y el Bufete Guiets Law Offices, PSC sobre: Re: Requerimiento de información y documentos en torno al contrato de servicios profesionales con el Municipio de Caguas - La comunicación fue marcada como confidencial por el TPI. [Nota: Por tratarse de comunicaciones bajo el privilegio cobijado por las Reglas 503, 504 y 505 no entramos a discutir el contenido, pero se solicita se tome conocimiento del contenido pues en torno a si se trata de comunicaciones privilegiadas el contenido habla por sí mismo], Véase SUMAC # 35, Exhibit 4 Estipulado Carta del 12 de mayo de 2023.
- Comunicación del 20 de junio de 2023 del Lcdo. Alex M. Rivera Longchamps dirigida al Lcdo. Francis Guiets y el Bufete Guiets Law Offices, PSC sobre: Re: Tratamiento en torno a la cancelación de gravámenes hipotecarios en los casos de expropiación y la presentación de facturas al TPI – La comunicación fue marcada como confidencial por el TPI. [Nota: Por tratarse de comunicaciones bajo el privilegio cobijado por las Reglas 503, 504 y 505 no entramos a discutir el contenido, pero se solicita se tome conocimiento del contenido pues en torno a si se trata de comunicaciones privilegiadas el contenido habla por sí mismo], Véase SUMAC #35, Exhibit 1 Pte Demandada Carta del 20 de junio de 2023.
- Comunicación 21 de junio de 2023 del Bufete Francis Guiets Law Offices, PSC y suscrita por el Lcdo. Christian J. Francis-Martínez dirigida al Lcdo. Rivera Longchamps sobre: Re: Tratamiento en torno a la cancelación de gravámenes hipotecarios en los casos de expropiación y la presentación de facturas al TPI [Nota: Por tratarse de comunicaciones bajo el privilegio cobijado por las Reglas 503, 504 y 505 no entramos a discutir el contenido pero se solicita se

tome conocimiento del contenido pues en torno a si se trata de comunicaciones privilegiadas el contenido habla por sí mismo], Véase SUMAC #35, Exhibit 2 Pte Demandada Comunicación del 21 de junio de 2023; y

- Comunicación del 15 septiembre de 2023 del Lcdo. Alex M. Rivera Longchamps dirigida al Lcdo. Francis Guiets y el Bufete Guiets Law Offices, PSC sobre Re: Comunicaciones relacionadas a la terminación del contrato 2021-003141 de servicios profesionales Nota: Por tratarse de comunicaciones bajo el privilegio cobijado por las Reglas 503, 504 y 505 no entramos a discutir el contenido pero se solicita se tome conocimiento del contenido pues en torno a si se trata de comunicaciones privilegiadas el contenido habla por si mismo], Véase SUMAC #35, Exhibit 3 Pte Demandda Carta Cancelación de Contrato de 15 de septiembre de 2023.

(36) El testimonio durante el interrogatorio por parte del MAC al testigo fue breve. Se circunscribió a aclarar si el trabajo realizado por este fue en calidad de abogado y si las comunicaciones sostenidas con terceros referente a los temas de este caso judicial fueron en calidad de abogado. En torno a ello este afirmó durante la vista celebrada el 31 de enero de 2025 que:

- Su trabajo en torno al tema de estorbos públicos fue de naturaleza legal el tipo de trabajo que realizan los abogados, véase Exhibit 3 de este escrito, página 11, líneas 3-4;
- Las comunicaciones, si alguna, con la Lcda. Mónica Vega Conde en torno al tema de este procedimiento fue en calidad de abogado, véase Exhibit 3 de este escrito, página 11, líneas 9 a la 11;
- Las comunicaciones con otros abogados incluidos en los 15 requerimientos objetados por el MAC como el Lcdo. Vazquez en torno al tema de este procedimiento fueron en calidad de abogado, véase Exhibit 3 de este escrito, página 19, líneas 18-20; y
- Que las cartas e información intercambiadas con el Lcdo. Guiets y/o su bufete de abogados incluyendo las que se admitieron en evidencia fueron en calidad de abogado, véase Exhibit 3 de este escrito, página 17, líneas 18-20.

(37) El Lcdo. Rivera Longchamps fue sometido a un extenso contrainterrogatorio que se extendió alrededor de 10 horas y duró dos días.

(41) Durante el contrainterrogatorio los demandantes argumentaron que el MAC había renunciado al privilegio abogado cliente. Para ello presentaron (i) copia de entrevista realizada al Municipio por el Centro de Periodismo Investigativo ("CPI") sobre el tema de estorbos públicos; y (ii) audio de vista ante la Legislatura Municipal de Caguas y preguntas al respecto en la transcripción de la vista de 13 de mayo de 2025, páginas 47-56, exhibit 10 de este escrito.

(42) De la entrevista realizada al Municipio sobre el tema de estorbos públicos ante el CPI no surge la divulgación

y/o entrega de documentos bajo los 15 incisos reclamados como privilegiados y confidenciales por parte del Municipio;

(43)    Los demandantes indujeron a error al TPI al inicio de la discusión de la entrevista del CPI argumentando que documentos habían sido divulgados y formaban parte de la entrevista lo que luego tuvieron que admitir no era cierto, véase Exhibit 3, págs. 27, líneas 15-23 de la transcripción de vista de 31 de enero de 2025;

(44)    De la comparecencia a la Legislatura Municipal por el Lcdo. Rivera Longchamps acompañando a su cliente (funcionarios del MAC) sobre el tema de estorbos públicos no surge la divulgación y/o entrega de documentos bajo los 15 incisos reclamados como privilegiados y confidenciales por parte del Municipio;

(47)    Durante el Contrainterrogatorio en múltiples instancias el Lcdo. Rivera afirmó que su trabajo era en calidad de abogado y que no podía contestar o dar información sobre asuntos pues violentaba su responsabilidad profesional.

A los cuales el Tribunal añade la siguiente: Durante las vistas celebradas los días 27 de agosto de 2024, 26 de noviembre de 2024, 31 de enero de 2025 y 13 de mayo de 2025, la Licenciada Mónica Vega Conde y el Licenciado Alex Rivera Longchamps comparecieron en calidad de testigos del Municipio Autónomo de Caguas y no como sus abogados.[17]

Inconforme con lo resuelto por el foro primario, el apelante acude ante este tribunal intermedio mediante el recurso de epígrafe y expone los siguientes señalamientos de error:

PRIMER ERROR: Erró el Tribunal de Primera Instancia al obviar catorce (14) hechos adicionales no controvertidos que se sustentan en documentos y testimonios emitidos.

SEGUNDO ERROR: Erró el TPI al incluir un nuevo hecho a pesar de la extensa prueba en contrario y ordenar que tanto la Directora Legal del MAC así como el representante legal externo del MAC que atienden los asuntos relacionados a este caso no pudiesen estar presentes en el transcurso del caso y brindar su apoyo, consejería y asesoramiento al MAC.

TERCER ERROR: Erró el TPI al permitir que el Abogado y el Bufete demandaran al MAC y participaran activamente durante el transcurso del caso a pesar de haber sido informado el grave conflicto de interés, la violación de los cánones de ética y la configuración de representación sucesiva adversa.

CUARTO ERROR: Erró el TPI al actuar de forma arbitraria y parcializada a favor de una parte y dejar desprovista a otra sin ejercer un balance en la protección de los derechos que le asisten a ambas partes al evaluar si aplicaba o no el privilegio abogado cliente reclamado.

---

[17] *Id.*

Recibido el recurso de *Apelación* el 21 de julio de 2025, la parte apelada presentó moción donde solicitó se desestimara dicha apelación por adolecer de un apéndice incompleto y defectuoso. El Municipio oportunamente se opuso y la parte apelante, en respuesta, reiteró su posición. Declaramos No Ha Lugar la referida *Solicitud de Desestimación* presentada por los apelados. Además, tomamos conocimiento judicial de los casos CG2024CV03364 y CG2024CV03685 según solicitado por el apelante. Al haber quedado perfeccionado el recurso, resolvemos.

## II

## A

De ordinario, los tribunales apelativos aceptamos como correctas las determinaciones de hechos de los tribunales de instancia, al igual que su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en sala. Después de todo, la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz. Por definición, un tribunal de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial.

Según lo dispuesto en la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, **"[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos".** (Énfasis nuestro.) Por consiguiente, se ha reconocido por nuestro más alto foro que los jueces de instancia son quienes están en mejor posición de aquilatar la prueba; por ello, su apreciación nos merece gran respeto y deferencia. *S.L.G. Rivera Carrasquillo v. A.A.A*, 177 DPR 345, 356 (2009). Debemos recordar que el tribunal revisor solo cuenta con

récords mudos e inexpresivos por lo cual, debemos conferirle respeto a la adjudicación de credibilidad emitida por los foros primarios. *Id.* "Por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada ya que él fue quien oyó y vio declarar a los testigos". *Argüello v. Argüello*, 155 DPR 62, 79 (2001). Cualquier conflicto que surja sobre alguna prueba debe ser resuelto por el foro competente, es decir el foro primario. *S.L.G. Rivera Carrasquillo v. A.A.A*, *supra*, que cita a *Trinidad v. Chade*, 153 DPR 280 (2001).

**Es norma fundamental en nuestro ordenamiento jurídico que los tribunales apelativos, ante la ausencia de error manifiesto, prejuicio, pasión o parcialidad, no deberán intervenir con las conclusiones de hechos, apreciación de la prueba y adjudicaciones de credibilidad emitidas por los tribunales de instancia.** *Argüello v. Argüello*, *supra*, pág. 78; *S.L.G. Rivera Carrasquillo v. A.A.A*, *supra*, pág. 356; *Pueblo v. Acevedo Estrada*, 150 DPR 84 (2000). En consecuencia, la intervención por parte de un foro apelativo sólo procederá "**en casos en que [de] un análisis integral de [la] prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia".** (Énfasis nuestro.) *S.L.G. Rivera Carrasquillo v. A.A.A*, *supra*, que cita a *Pueblo v. Cabán Torres*, 117 DPR 645, 648 (1986). Para lograr la revocación, le corresponde al apelante determinar y demostrar la base para dicho fundamento. *S.L.G. Rivera Carrasquillo v. A.A.A*, *supra*; *Pueblo v. Cabán Torres, supra.* De igual forma, "la parte que cuestione una determinación de hechos realizadas por el foro primario debe señalar el error manifiesto, o fundamentar la existencia de pasión perjuicio o parcialidad". *S.L.G. Rivera Carrasquillo v. A.A.A, supra*, que cita a *Flores v. Soc. Gananciales*, 146 DPR 45, 49 (1998).

A su vez, se ha enfatizado que un "foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de

instancia". *Argüello v. Argüello, supra*, pág. 78 que cita a *Rolón v. Charlie Car Rental Inc.*, 148 DPR 420, 433 (1999). De igual forma estamos conscientes que con relación a la prueba documental nos encontramos en la misma posición que el foro de instancia. *Trinidad v. Chade, supra.*

Por otra parte, la Regla 110 de Evidencia, 32 LPRA Ap. VI R. 110, dispone en lo pertinente al caso de autos lo siguiente:

> **La juzgadora o el juzgador de hechos deberá evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los principios siguientes:**
>
> [...]
> (**D) La evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley.**
>
> **(E) La juzgadora o el juzgador de hechos no tiene la obligación de decidir de acuerdo con las declaraciones de cualquier cantidad de testigos que no le convenzan contra un número menor u otra evidencia que le resulte más convincente.** (Énfasis nuestro.)

Como resultado, se recalca la deferencia que se le debe otorgar al foro primario al estar en mejor posición para aquilatar la prueba ante sí ya que no existe duda que dicho foro es el que mejor conoce las particularidades del caso y por tanto es quien puede tomar las mejores medidas para promover el curso adecuado hacia su disposición final como corolario de la búsqueda de la verdad. Ahora bien, debemos recalcar que esta deferencia hacia los tribunales primarios no es absoluta.

**B**

El Artículo 409 del Código de Enjuiciamiento Civil dispone, en lo pertinente, que «[t]odo ciudadano tiene **derecho a inspeccionar y sacar copia de cualquier documento público** de Puerto Rico, salvo lo expresamente dispuesto en contrario por la ley». (Énfasis nuestro.) 32 LPRA sec. 1781. Se trata del **derecho de acceso a la información pública** que, según ha reconocido el Tribunal Supremo de Puerto Rico, es un **corolario necesario de los derechos fundamentales de libertad de expresión, prensa y asociación** establecidos en la Sección 4 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico y la Primera

Enmienda de la Constitución federal, LPRA Tomo 1. *Nieves v. Junta*, 160 DPR 97, 102 (2003).

El derecho a la información antes mencionado depende de que la información solicitada sea propiamente pública. A esos efectos, el Artículo 1 (b) de la *Ley de Administración de Documentos Públicos de Puerto Rico*, según enmendada, dispone que se considerará público todo documento que "**se origine, conserve o reciba en cualquier dependencia** del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en [esta Ley] **se requiera conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal**". (Énfasis nuestro.) 3 LPRA sec. 1001 (b). Asimismo, el Artículo 2.015 del Código Municipal de Puerto Rico dispone que:

> [...] A los fines de este Artículo, "documento público" significará cualquier escrito, impreso, papel, libro, folleto, fotografía, fotocopia, película, microficha, cinta magnetofónica, mapa, dibujo, plano, cinta, disco compacto o cualquier otro material leído por máquina e informativo, sin importar su forma o características físicas y que se origine, se reciba o se conserve en cualquier unidad administrativa, dependencia u oficina del municipio de acuerdo con este Código; y cualquier escrito que se origine en otra agencia del Gobierno estatal o del Gobierno federal o que se origine por cualquier persona privada, natural o jurídica, en el curso ordinario de transacciones con el municipio y se conserven permanente o temporalmente en cualesquiera unidades administrativas, oficinas o dependencias del municipio por su utilidad administrativa, valor legal, fiscal, histórico o cultural. 21 LPRA sec. 7175.

La norma incluye los documentos producidos electrónicamente. *Id.* Una vez un documento se ubica dentro de una de las categorías mencionadas, se convierte en un documento público y puede solicitarse su inspección. *Nieves v. Junta*, *supra*, págs. 102-103; *Ortiz v. Dir. Adm. de los Tribunales*, 152 DPR 161, 176 (2000).

Es sabido que el derecho de acceso a la información pública no es absoluto. *Colón Cabrera v. Caribbean Petroleum*, 160 DPR 582, 591 (2007); *Nieves v. Junta*, *supra*, pág. 103. Claro está, el Estado no puede negarse caprichosamente y de forma arbitraria a permitir el acceso a los

documentos públicos. *Colón Cabrera v. Caribbean Petroleum*, *supra*, pág. 590. No obstante, el Tribunal Supremo ha reconocido que "un reclamo de confidencialidad por parte del Estado puede prosperar solo cuando: (1) una ley así lo declara; (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden incoar los ciudadanos; (3) revelar la información puede lesionar los derechos fundamentales de terceros; (4) se trate de la identificación de un confidente, y (5) sea 'información oficial' conforme a la Regla 514 de las Reglas de Evidencia, *supra*". *Bhatia Gautier v. Gobernador,* 199 DPR 59, 83 (2017), que cita con aprobación a *Colón Cabrera v. Caribbean Petroleum*, *supra*, pág. 591. Además, **el peso probatorio corresponde al Estado, si es que pretende justificar cualquier reclamo de confidencialidad, que impida la publicidad de información gubernamental**. *E.L.A. v. Casta Developers*, 162 DPR 1, 11 (2004). En atención a lo anterior, el Tribunal Supremo ha opinado lo siguiente:

> **[T]oda ley que pretenda ocultarle información a un ciudadano bajo el palio de la confidencialidad tiene que justificarse a plenitud**. Como regla general, eso se satisface si: (a) la regulación gubernamental cae dentro del poder constitucional del Gobierno; (b) **propulsa un interés gubernamental importante o sustancial**; (c) el interés gubernamental no está relacionado con la supresión de la libertad de expresión, y (d) **la restricción concomitante del derecho a la libre expresión no es mayor que la esencial para propulsar ese interés**. (Énfasis nuestro.) *Nieves v. Junta*, *supra*, págs. 103-104; *Angueira v. J.L.B.P.*, 150 DPR 10, 24-25 (2000).

### C

Nuestras Reglas de Evidencia regulan lo pertinente a los privilegios evidenciaros entre los cuales se encuentra el privilegio abogado-cliente. Dicho privilegio se encuentra precitado en la Regla 503, el cual reza de la siguiente manera:

> (A) Según usadas en esta Regla, las siguientes expresiones tendrán el significado que a continuación se indica:
>
> (1) Abogada o Abogado: Persona autorizada o a quien el o la cliente razonablemente creyó autorizada a ejercer la profesión de la abogacía en Puerto Rico o en cualquier otra jurisdicción; incluyendo a sus asociadas, ayudantes y empleadas.

(2) Cliente: Persona natural o jurídica que, directamente o a través de representante autorizado, consulta a una abogada o a un abogado con el propósito de contratarle o de obtener servicios legales o consejo en su capacidad profesional. Incluye a la persona incapaz que consulta a una abogada o a un abogado o cuyo tutor, tutora o encargada hace tal gestión con la abogada o el abogado a nombre de la persona incapaz.

(3) Representante autorizado: Persona facultada para obtener servicios legales o actuar a base de consejo legal ofrecido, en representación de la que es cliente. Incluye a una persona que, con el propósito de que se brinde representación legal a quien es cliente, hace o recibe una comunicación confidencial mientras actúa dentro del alcance de su empleo con el o la cliente.

(4) Comunicación confidencial: Aquélla habida entre una abogada o un abogado y su cliente en relación con alguna gestión profesional, basada en la confianza de que no será divulgada a terceras personas, salvo a aquéllas que sea necesario para llevar a efecto los propósitos de la comunicación.

(B) Sujeto a lo dispuesto en esta Regla, el o la cliente –sea o no parte en el pleito o acción– tiene el privilegio de rehusar revelar, y de impedir que otra persona revele, una comunicación confidencial entre ella y su abogada o abogado. El privilegio puede ser invocado no sólo por quien lo posee –que es la persona cliente– sino también por una persona autorizada a invocarlo en beneficio de ésta, o por la abogada o el abogado a quien la comunicación fue hecha si lo invoca a nombre de y para beneficio de la que es cliente.

(C) No existe privilegio bajo esta Regla si:

(1) Los servicios de la abogada o del abogado fueron solicitados u obtenidos para permitir o ayudar a cualquier persona a cometer o planear la comisión de un delito o un fraude.

(2) La comunicación es pertinente a una controversia entre los herederos de la persona cliente ya fallecido, independientemente de que las reclamaciones provengan de un testamento o de sucesión intestada o de transacción entre vivos.

(3) La comunicación es pertinente a una controversia relativa a una violación de los deberes mutuos que surjan de la relación abogada o abogado-cliente.

(4) La comunicación es pertinente a una controversia relativa a un documento en que intervino la abogada o el abogado en calidad de notaria o notario.

(5) La comunicación es pertinente a una materia de común interés para dos o más personas que son clientes de la abogada o del abogado, en cuyo caso una de las personas clientes no puede invocar el privilegio contra las otras.

(D) Cuando dos o más personas se unen como clientes de una misma abogada o un mismo abogado en cuanto a un asunto de interés común entre ellas, ninguna podrá renunciar al privilegio sin el consentimiento de las otras.

El privilegio abogado cliente es el más antiguo de los que emanan del derecho común y tiene como fin garantizar la confidencialidad de las consultas a un abogado de manera que se promueva una ayuda legal efectiva". *Casasnovas. v. UBS Financial*, 198 DPR 1040, 1055 (2017). **La**

**parte que alega o reclama el privilegio abogado cliente tiene el peso de probar su existencia.** Por tal motivo, le corresponde establecer *prima facie* que concurren todos los elementos para su aplicación. *Id.* Estos son: 1) que existe una expectativa de confidencialidad; 2) que ésta es un elemento esencial para mantener la relación entre las partes; 3) que la comunidad promueve o reconoce este tipo de relación, y que el perjuicio ocasionado por la divulgación de la comunicación supera el beneficio de divulgarla. *Id.,* pág. 1056. Además, "[p]ara que un tribunal reconozca la existencia de una comunicación privilegiada es necesario que concurran cuatro condiciones fundamentales, a saber: (1) la comunicación tiene que haberse originado en la confianza de que no sería divulgada; (2) este elemento de confiabilidad tiene que ser esencial para mantener plena y satisfactoriamente la relación entre las partes; (3) la relación debe ser tal que la comunidad considere debe ser diligentemente promovida, y (4) el perjuicio que causaría la divulgación de la comunicación debe ser mayor que el beneficio obtenido por la correcta disposición del pleito". *García Negrón v. Tribunal Superior*, 104 DPR 727,732 (1976).

**D**

Sabido es que los abogados ostentan un deber de lealtad a sus clientes. Dicha encomienda se encuentra codificada en el Canon 21 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 21 el cual busca evitar que los abogados y abogadas incurran en la representación de intereses encontrados.

A esos efectos, el Canon 21, *supra*, lee como sigue:

> El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.

> No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que

debe oponerse en cumplimiento de sus obligaciones para con otro cliente.

La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.

Un abogado que representa a una corporación o sociedad le debe completa lealtad a la persona jurídica y no a sus socios, directores, empleados o accionistas y solamente puede representar los intereses de dichas personas cuando los mismos no vengan en conflicto con los de la corporación o sociedad.

Cuando un abogado representa a un cliente por encomienda de otra persona o grupo, quien le paga al abogado por dicho servicio, debe renunciar la representación de ambos tan pronto surja una situación de conflicto de intereses entre la persona o grupo que le paga sus honorarios y la persona a quien representa.

Conforme a lo citado, podemos ver que el Canon 21, *supra*, presenta tres situaciones que el abogado debe evitar. En primer lugar, aceptar la representación legal cuando a su juicio esta pueda verse afectada por sus expectativas o intereses personales. En segundo lugar, aceptar la representación legal simultánea de dos clientes con intereses opuestos y en tercer y último lugar, aceptar la representación de un cliente en asuntos que puedan afectar cualquier interés de un cliente anterior.

En *In re-Aponte Duchesne*, 191 DPR 247, 256-257 (2014), nuestro Tribunal Supremo analizó con mayor detenimiento los supuestos de aplicación del Canon 21. Citamos lo discutido en cuanto al último supuesto por ser el concerniente al caso ante nuestra consideración:

La última situación contemplada por este Canon como configurativo de un conflicto de intereses es la representación sucesiva adversa de clientes. Esto es, cuando "un abogado acepta la representación legal de una persona, cuyos intereses en el caso actual podrían ser conflictivos con los de un cliente pasado del abogado, y por lo tanto, éste se coloca en una posición de desventaja frente a aqu[e]l".

Para determinar si un miembro de la profesión legal incurrió en la representación sucesiva de intereses encontrados de clientes, se debe analizar si existe una

relación sustancial entre los asuntos que maneja el abogado o abogada con dos clientes actuales o entre los que manejó con un cliente pasado y los que maneja con un cliente actual. La relación sustancial debe ser más que una mera coincidencia de los sujetos involucrados o una mera coincidencia temática entre el asunto general de una representación actual y una pasada.

Con relación a la representación simultánea adversa y la representación sucesiva adversa, no se requiere probar una violación al principio de confidencialidad; sólo se requiere una relación previa de abogado y cliente, y que tal representación resulte adversa y esté relacionada sustancialmente con la anterior. *[…]*. Además, la inexistencia de una relación abogado-cliente dual no exime a un miembro de la profesión de una imputación de conducta impropia. *[…]*. No obstante, para que se activen las prohibiciones sobre representación simultánea adversa o representación sucesiva adversa, es necesaria la existencia de una relación abogado-cliente.

Finalmente, cabe señalar que para analizar la conducta de un abogado o abogada en cualquiera de las situaciones antes indicadas, es indispensable tener en mente que la prohibición del Canon 21 del Código de Ética Profesional, se extiende no sólo a la existencia real del conflicto, sino también a conflictos aparentes, pero que llevan consigo la semilla de un posible o potencial conflicto futuro. (Citas omitidas).

**III**

Como bien mencionamos en nuestra síntesis del tracto procesal del caso que nos atañe, el Municipio Autónomo de Caguas acude ante nosotros mediante el recurso de epígrafe y en su primer señalamiento de error plantea que el TPI se equivocó al obviar catorce (14) hechos adicionales no controvertidos que se sustentan con la prueba documental y testimonial. No obstante, las determinaciones de hechos rechazadas, que realmente fueron dieciocho (18) y no catorce (14) como alega la parte apelante, no se trataba de determinaciones de hechos que cambiarían el resultado de lo resuelto. Esto último pues las determinaciones rechazadas en su mayoría no eran indispensables para la controversia, otras eran impertinentes o demostraban un lenguaje parcializado y/o sugestivo. Ante lo anterior resolvemos que el foro primario no cometió el error señalado. Por otro lado, el segundo señalamiento de error versa acerca de la determinación de hecho añadida al final por el mismo tribunal en su *Resolución sobre Solicitud de Determinaciones de Hechos Adicionales y*

*de Reconsideración.* La citamos a continuación: "Durante las vistas celebradas los días 27 de agosto de 2024, 26 de noviembre de 2024, 31 de enero de 2025 y 13 de mayo de 2025, la Licenciada Mónica Vega Conde y el Licenciado Alex Rivera Longchamps comparecieron en calidad de testigos del Municipio Autónomo de Caguas y no como sus abogados". Tanto la Licenciada Mónica Vega Conde y el Licenciado Alex Rivera Longchamps testificaron a favor del Municipio. Este solicitó formar parte del pleito,[18] pero dicho petitorio fue denegado por el TPI. Este justificó su motivo en que no estaban ante un procedimiento civil ordinario, sino que un procedimiento expedito, por lo que la intervención del Licenciado Alex M. Rivera Longchamps atrasaría los procesos injustificadamente además de que fue el propio Municipio quien había traído al Licenciado como su testigo.[19] Conforme a su discreción no entendió meritoria la solicitud de intervención y por tanto fue declarada No Ha Lugar. Concluimos nuevamente que el tribunal de instancia no incurrió en error en cuanto a lo señalado.

El tercer señalamiento de error de la parte apelante consta en alegar que el TPI se equivocó al permitir que la parte apelada, entiéndase el bufete Francis & Gueits Law Office, P.C.S. y su representante el Licenciado Christian Francis Martínez, demandara a la parte apelante y permitir que los apelados participaran activamente durante el caso a pesar de que el Municipio notificó al tribunal acerca del grave conflicto de interés, violaciones a los cánones de ética y la configuración de representación sucesiva adversa, demandara a la parte apelante y participaran del proceso a pesar de que se le notificó reiteradamente la parte apelada ha indicado que en la controversia que nos ocupa comparece en su carácter personal. A raíz de lo anterior, no cabe hablar de representación sucesiva adversa puesto que la parte apelada no representa en calidad de abogados a cliente alguno que esté en conflicto con los intereses del Municipio en este caso.

---

[18] SUMAC, Entrada 68 en CG2024CV00338.
[19] SUMAC, Entrada 69 en CG2024CV00338.

En la alternativa, advertimos que un abogado no está de facto impedido de demandar en su carácter personal a un cliente anterior una vez su representación haya cesado. Si la parte apelada tiene alguna queja en cuanto al desempeño ético de la parte apelada mientras esta brindó servicios legales a dicha parte apelada, pronunciamos que este no es el foro adecuado para ello.

Por último, la parte apelada señala además que el TPI actuó arbitrariamente y de forma parcializada a favor de la parte apelada y dejó desprovista a la parte apelante al no ejercer un balance en la protección de los derechos que le asisten a ambas partes al evaluar si aplicaba o no el privilegio abogado cliente reclamado. En su discusión expone que la Ley 141 da lugar a muchos vacíos jurídicos en cuanto a cómo manejar una solicitud al amparo de dicho estatuto una vez este llegue a los tribunales del país. En cuanto al pleito que nos ocupa sabemos que la parte apelada notificó al MAC una serie de requerimientos de información por virtud de la Ley 141 el 22 de diciembre de 2023. Tal y como establece la Ley, se le conceden diez (10) días laborables a quien se le requiere la información para proveerla. Entiéndase que el MAC tenía hasta el 9 de enero de 2024 para contestar los requerimientos, sin embargo, este cursó su contestación un día fuera de término, el 10 de enero de 2024. A raíz de lo anterior, y por el hecho de que alguna información fue objetada por reclamar el privilegio abogado-cliente al amparo de la Regla 503 de Evidencia, la parte apelada recurrió al foro primario el 1 de febrero de 2024 mediante recurso especial. Ante lo mencionado, es norma conocida que quien reclama un privilegio evidenciario carga con la responsabilidad de probarlo, de igual manera si el Estado, sus municipios o instrumentalidades niegan proveer alguna información pública, estos poseen el peso de justificar su denegatoria. El foro *a quo* realizó su trabajo, vio la documentación y escuchó los testimonios de los declarantes. Por tanto, sopesó cualitativamente el peso probatorio de la prueba presentada y fundamentó su decisión. Al revisar el expediente del caso, no vemos que las alegaciones de la parte apelante en

cuanto a su señalamiento de error se sostengan. Por tanto, no procede que interfiramos con la deferencia que ostenta el foro primario y como resultado, confirmamos la *Resolución* apelada en todos sus extremos.

**IV**

Por los fundamentos que anteceden, se confirma la *Resolución* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones